JOHN L. WEISMER, Appellant, v. THE VILLAGE OF DOUGLAS, Respondent.

The legislative power of taxation, at least as regards the purposes for which it is to be exercised, is not without limit, and it is within the province of the courts to examine and to determine whether, in a particular case, the extreme boundary of legislative power has been reached and passed; it must be made quite clear, however, that the legislature has erred before the court can interfere with its action.

Statement of case.

The legislature has not power to authorize a municipal corporation to issue its obligations for the purpose of raising money wherewith to pay a subscription of said corporation to the capital stock of a private corporation, and to provide for the payment of such obligations by taxation; it has not power to tax for private purposes solely.

Accordingly, *held*, that the act (chap. 577, Laws of 1868) purporting to authorize defendant to subscribe for and take capital stock of the L. E. H. and M. Co., to issue its bonds to raise money to pay for such stock, and to collect by taxation the moneys to pay said bonds, was unconstitutional and void, and the bonds issued thereunder invalid.

The *Town of Guilford* v. *Supervisors of Chenango* (13 N. Y., 143) distinguished and limited.

A municipal corporation is not estopped from asserting the invalidity of its bonds, by any conduct of its officers or agents, or by acts of acquiescence and approval on the part of the inhabitants of the municipality, after knowledge of the facts.

*Allegheny City* v. *McClaskan* (14 Penn., 81) questioned.

(Argued January 21, 1876; decided February 1, 1876.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of defendant, entered upon an order reversing a judgment of Special Term in favor of plaintiff, and directing judgment for defendant. (Reported below, 6 T. & C., 514; 4 Hun, 201.)

This action was brought to recover the interest due upon certain bonds issued by defendant under the act (chap. 577, Laws of 1868), authorizing defendant to take stock, not exceeding $10,000, in the Long Eddy Hydraulic and Manufacturing Company, upon certain conditions therein specified, and to issue bonds to raise the money to pay for such subscription, and to levy and collect taxes for the payment of the principal and interest on said bonds.

The court found the following facts among others:

" The Long Eddy Hydraulic and Manufacturing Company, since the 15th of February, 1867, has been and is a corporation aggregate, incorporated and organized under the general laws of this State, and having its place of business at the said village of Douglas, formed for the object of constructing and

improving a water privilege on the Delaware river at the said village, and for the purpose of manufacturing lumber, etc., thereon.

"The said Delaware river, at the point above specified, is a public highway, largely used and navigated as such by the public in running thereon to market rafts of lumber, logs and timber, which are the principal productions of the surrounding section of country.

"By an act of the legislature of this State, entitled 'An act to authorize the building of a dam across the Delaware river at the village of Douglas, Sullivan county, New York,' passed May 9, 1867, the said Long Eddy Hydraulic and Manufacturing Company was authorized, upon compliance with certain conditions therein specified, to erect, build and maintain a dam across the said Delaware river, in the town of Fremont, Sullivan county, between the county of Sullivan, in the State of New York, and the county of Wayne, in the State of Pennsylvania, at a point to be fixed on by said company, and for that purpose, under certain restrictions therein imposed, and upon making due compensation therefor, to take and flow such lands as should be necessary or convenient to enable the said company to accomplish the object of its incorporation.

"The objects and purposes of said company were not strictly or exclusively of a private nature, but, to some extent, partook of a public character, and were sufficiently broad and extended to include a public use, and the material growth and prosperity of the said village would have been largely increased by the accomplishment of the objects of said company, as it would have added a large tax-paying element thereto, increased the value of the adjacent property, and furnished an extensive manufactory for lumber and other raw products, and the public might have been benefited, and the convenience of public business promoted by the cleaning out the channel of said river and the construction of docking and piers on the bank of the same, which would have come within the apparent objects and purposes of said company."

The court also found that, under authority conferred by said act, the officers of defendant subscribed for stock of said company to the amount of $10,000, and to that amount issued and signed bonds, of which the bonds in question form part. The bonds were denominated upon their face, "Internal Improvement Fund of the village of Douglas," and recited that they were authorized by the said act of 1868. The first three installments of interest were paid by defendant.

As conclusions of law the court found, among others, that the objects of said Long Eddy Hydraulic and Manufacturing Company were to such an extent public as to justify the legislature in exerting its constitutional power of taxation in its behalf; that said act of 1868 was constitutional and valid, and that plaintiff was entitled to recover.

It appeared that the first installment of interest was paid by defendant, and its officers once voted on the stock.

Further facts appear in the opinion.

*D. D. Niles* for the appellant. The issue of the bonds by defendant was an exercise of the power of taxation, and not an exertion of the right of eminent domain. (*Town of Duanesburgh* v. *Jenkins*, 57 N. Y., 177; *People* v. *Mayor, etc.*, 4 id., 419; *Guilford* v. *Suprs. of Chenango Co.*, 3 Kern., 143; *Olcott* v. *Suprs.*, 16 Wall., 678.) The constitutional inhibitions against depriving a person of property without due process of law and taking private property for private purposes do not apply to property or money exacted by the power of taxation. (4 N. Y., 419; 3 Kern., 143; *Howell* v. *City of Buffalo*, 37 N. Y., 267; *Darlington* v. *Mayor, etc.*, 31 id., 189, 190; *Davidson* v. *Mayor, etc.*, 27 How., 342; *People* v. *Mitchell*, 45 Barb., 308; 35 N. Y., 551; *Bk. of Rome* v. *Village of Rome*, 18 id., 38; *Thomas* v. *Leland*, 24 Wend., 65; Dillon on Munic. Corp., 686.) The right of the legislature to delegate to any of the municipal divisions of the State the authority to impose taxes is coextensive with its own power of taxation, and if the objects to which the proceeds of the tax are to be devoted are of such a

character as to justify the legislature itself in promoting them by taxation, the act must be sustained. (2 Dillon's Munic. Corp., 687; *Bk. of Rome* v. *Vil. of Rome*, 18 N. Y., 38; *Loan Assn.* v. *Topeka*, 20 Wall., 655; *Clarke* v. *Rochester*, 13 How. Pr., 204; 24 Barb., 446; 26 N. Y., 471, note; *Bloodgood* v. *M. and H. R. R. Co.*, 18 Wend., 9, 31; *People* v. *Morrell*, 21 id., 576; *Cochran* v. *Van Surlay*, 20 id., 381, 382; *Butler* v. *Palmer*, 1 Hill, 324, 329; *Wynehamer* v. *People*, 13 N. Y., 378, 391; *Leggett* v. *Hunter*, 19 id., 445; *Darlington* v. *Mayor, etc.*, 31 id., 187; *Bk. of Chenango* v. *Brown*, 26 id., 467; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177; *People* v. *Fisher*, 24 Wend., 215; *Grant* v. *Courter*, 24 Barb., 237; *Clarke* v. *Rochester*, id., 480; *People* v. *Draper*, 14 N. Y., 543; *Calder* v. *Bull*, 3 Dall., 386; *Thomas* v. *Leland*, 24 Wend., 65; 3 Kern., 143; *Brewster* v. *City of Syracuse*, 19 N. Y., 116; *Benson* v. *Mayor, etc.*, 24 Barb., 254; *Howell* v. *City of Buffalo*, 37 N. Y., 267; *People* v. *Lawrence*, 41 id., 123.) By proceeding under the act and accepting the benefits conferred by it, defendant has waived the right to question its constitutionality. (*Houston* v. *Wheeler*, 52 N. Y., 641; *Sherman* v. *McKeon*, 38 id., 266; *Embury* v. *Conner*, 3 id., 511; *Baker* v. *Braman*, 6 Hill, 47; *Vose* v. *Cockroft*, 44 N. Y., 415; *Van Hook* v. *Whitlock*, 26 Wend., 43; *People ex rel.* v. *Havemeyer*, 4 T. & C., 365; *Allegheny City* v. *McClurkan*, 14 Penn. St., 81.) Defendant, as against a *bona fide* holder, is precluded from asserting that the act is unconstitutional. (*F. and M. Bk.* v. *B. and D. Bk.*, 16 N. Y., 125; *Storey* v. *Am. L. Ins. Co.*, 11 Paige, 635; *Suprs.* v. *Schenck*, 5 Wall., 784; *Morford* v. *Farmers' Bk.*, 26 Barb., 568; *State of Indiana* v. *Woram*, 6 Hill, 33; *Moss* v. *Rossie L. M. Co.*, 5 id., 137; 5 Am. L. Rev., 272; 2 Dillon's Munic. Corp., 855.) Any fraud or irregularity in the issue of the bonds does not constitute a defence against a *bona fide* holder for value. (*Bk. of Rome* v. *Vil. of Rome*, 18 N. Y., 38; *Grand Chute* v. *Winegar*, 15 Wall., 355; *Lexington* v. *Butler*, 14 id., 282; *Mercer Co.* v. *Hackett*, 1 id., 83; *Gelpcke* v. *Dubuque*, id., 175; *Meyers* v.

*Muscatine,* id., 384; *People* v. *Mitchell,* 35 N. Y., 551; 45 Barb., 2C8.) The fact that the date of the act was erroneously recited in the bonds was entirely immaterial. (*Judd* v. *Waddle,* 21 N. Y., 186; *Jackson* v. *Clarke,* 7 J. R., 216; *Dodge* v. *Potter,* 18 Barb., 193; *Fuller* v. *Acker,* 1 Hill, 473.)

*W. J. Welsh* for the respondent. The purpose for which the bonds were issued, and in aid of which a tax was to be levied, was a private use. (2 R. S. [5th ed.], 658; *Cit. Loan Assn.* v. *Topeka,* 20 Wall., 655; *Lowell* v. *Boston,* 111 Mass., 463; *Com. Bk.* v. *City of Iola,* 2 Dil., 353; *Allen* v. *Inhab. of Jay,* 60 Me., 124; *Brewer Brick Co.* v. *Brewer,* 62 id., 62; *Wooster* v. *West. R. R. Co.,* 4 Metc., 564; *W. R. Bridge Co.* v. *Dix,* 6 How. [U. S.], 546; *Bonaparte* v. *C. and A. R. R. Co.,* 1 Bald., 273; *Beekman* v. *Sara. R. R. Co.,* 3 Paige, 45; *Bloodgood* v. *M. and H. R. R. Co.,* 18 Wend., 21–60; *In re Townsend,* 39 N. Y., 184; *Hay* v. *Cohoes Co.,* 3 Barb., 47.) The legislature can neither directly or indirectly authorize taxation for a private use, or to aid a private manufacturing corporation. (*People* v. *Mayor of Bklyn.,* 4 N. Y., 422; Gerard's Titles to R. E., 736; *Lowell* v. *Boston,* 111 Mass., 462; *Varick* v. *Smith,* 5 Paige, 146; *Wilkenson* v. *Porter,* 4 Hill, 143; 2 Kent's Com. [10th ed.], 327; *In re Albany St.,* 11 Wend., 149; *Embury* v. *Conner,* 3 N. Y., 511; *People* v. *Norris,* 13 Wend., 328; *People* v. *Flagg,* 46 N. Y., 405; *Gordon* v. *Cornes,* 47 id., 612; *Sharpless* v. *Mayor, etc.,* 21 Penn., 168; *People* v. *Batchellor,* 53 N. Y., 143; *Olcott* v. *Suprs.,* 16 Wall., 678.) The courts may determine what is a private and what a public use. (4 N. Y., 419; 53 id., 143; *Sweet* v. *Hulbert,* 51 Barb., 312; Gerard's Titles to R. E., 32; Cooley's Const. Lim., 494; *In re Albany St.,* 11 Wend., 151; *Bloodgood* v. *H. R. R. R. Co.,* 18 id., 9; *Taylor* v. *Porter,* 4 Hill, 140; 5 Paige, 127; 3 N. Y., 511; Sedg. on Stat. and Const. Law, 511; *In re Townsend,* 39 N. Y., 174.) The subscription for the stock made no difference. (*Taylor* v. *Porter,* 4 Hill, 143;

*Olcott* v. *Suprs.*, 16 Wall, 698; *Town of Venice* v. *Breed*, 1 N. Y. S. C., 136.) The payment of the interest worked no estoppel. (*Cit. S. and L. Assn.* v. *City of Topeka*, 20 Wall., 655.)

FOLGER, J. The main question in this case is, whether there was power in the legislature to pass the act, which ostensibly gave authority to the defendant to issue and negotiate its bonds, and with the moneys realized therefrom, to subscribe for and take shares of the capital stock of the manufacturing corporation. There was not, unless it is found in the power of taxation; and in the further right to delegate that power to a municipality, to be exercised by it, in a locality, and over a portion of the people, of the State. We shall look only to the power of taxation and the right to delegate it; although one of the acts of the legislature, which is in a degree involved in this case, is said to indicate the exercise by the legislature of the power of eminent domain, or a delegation of that power. The immediate authority given by the principal act is to issue and negotiate the bonds of the defendant, for the future payment of money. The ultimate resort, the only sure and absolute resort for the means of payment, must necessarily be taxation. The act indeed contemplates dividends to be obtained by the defendant from the capital stock taken by it, but with so little reliance thereon, that it makes explicit, minute and elaborate provision, for taxation to meet the interest and principal of the bonds. The practical result of the actings of the defendant, its officers and agents, under the statute has been, that no payment of interest has been made save by moneys raised by taxation. The case shows that by that means alone will the bonds ever be paid by the defendant.

Now it is quite true, that there are opinions given in adjudications upon this general subject, which go to great length in declaring the extent of the legislative power of taxation, and which, if taken in all the scope of the sentiments uttered, seem to permit an extension of it without limit, and to deny

SICKELS—XIX.    13

any judicial power to fix a bound to it, or to question in any case the legislative right to exercise and delegate it. Perhaps the most noted of these in this State, and which may be taken as an example of all, is in the case of *The Town of Guilford* v. *Supervisors of Chenango County* (13 N. Y., 143). It is a case very familiar to our bench and bar, and some of the views expressed in it have the sanction of a great judicial name and reputation. It is there asserted that the legislature can determine what sums shall be raised by taxation, and the purposes to which the money shall be applied ; that it can recognize claims founded in equity and justice in the largest sense of those terms, or in gratitude or charity ; and (what seems to press more upon us here) that, independent of any express constitutional restrictions, it can make appropriation of money whenever the public well being requires or will be promoted by it, and that it is the judge of what is for the public good. Other cases preceded or followed that, with more or less closeness to utterance of the same doctrine.

It is not needed that we now deny that there is no limitation whatever upon the legislative power. to tax, considered as to the amount which shall be raised thereby, and the subjects from which it shall be raised, unless a limit is found in express constitutional restrictions. The reliance of the people against excessive taxation, unjust in the application of it to the thing taxed, must be in the character of their legislative representatives, and their remedy when that reliance fails must be found in the power to displace and change them at recurring intervals.

When, however, we come to deal with the power of taxation in reference to the purposes for which it is to be exercised, we may not admit so much. It cannot but be conceded that there is an end to it somewhere. Every mind must be able to conceive of some legislative attempt to exercise this great and extensive power, which would fail to find warrant either in our written Constitution or in any inherent governmental authority, and which the owner of property subjected to it would have a right to resist. To use the not uncom-

mon illustration, it must be far beyond the reach of real legislative authority to take the property of A, or of A and some, many, or all others, and give it to B, when there is no legal, equitable, just or moral obligation to render unto B one farthing. But to tax A and the others to raise money to pay over to B, is only a way of taking their property for that purpose. If A may of right resist this, as surely he may, how is he to make resistance effective and peaceable save through the courts, which are set to be his guardians? How may the courts guard and aid him, unless they have the power, upon his complaint, to examine into the legislative act, and to determine whether the extreme boundary of legislative power has been reached and passed? So that the legislature is not sole, supreme and unrestrainable therein, and the courts are not debarred; but may, as a co-ordinate branch of the government, scrutinize and measure the legislative act; always keeping in mind, that the legislature is the primary authority which is to inquire, what is a proper purpose for the application of money to be raised by taxation, and the necessity of taxation to subserve it, and that it must be quite clear that it has erred before the courts can arrest the consequences of its action.

Nor are the courts without some rule to guide them in their scrutiny. It is a general rule that the legitimate object of raising money by taxation is for public purposes and the proper needs of government, general and local, State and municipal. When we come to ask, in any case, what is a public purpose, the answer is not always ready, nor easily to be found. It is to be conceded that no pinched or meager sense may be put upon the words, and that if the purpose designated by the legislature lies so near the border line as that it may be doubtful on which side of it it is domiciled, the courts may not set their judgment against that of the law makers. And hence it is that, though the case above cited (13 N. Y.) has been commented upon, and some of its utterances criticised (Dillon on Munic. Corp., p. 90, § 44, note 2; Cooley on Const. Lim., * 380, note 1, 490, note 2;

Sedgw. on Const. and Stat. Constr., * 313, * 314), the judgment there rendered upon the facts there exhibited has not been met with a disapproval, authoritative upon us. It has been accepted in this State as a binding adjudication, that the legislature may tax, or delegate to a political division of the State the power to tax, or may compel that division to tax, to raise money to pay a legal, equitable or moral claim, or to do that toward an individual which proper and expected sense of gratitude for public service ought to prompt, or a feeling of charity (which, in a legal sense, is, perhaps, as used here, no other than moral obligation), urge. It may also be conceded that that is a public purpose, from the attainment of which will flow some benefit or convenience to the public, whether of the whole commonwealth or of a circumscribed community. In this latter case, however, the benefit or convenience must be direct and immediate from the purpose, and not collateral, remote or consequential. It must be a benefit or convenience which each citizen of the community affected may lay his own hand to in his own right, and take unto his own use at his own option, upon the same reasonable terms and conditions as any other citizen thereof. He may not be made to depend for it on the spontaneous action of others, or to receive it in uncertain degree or manner or roundabout way, or hampered with discriminating distinctions and conditions.

In this spirit we will look at the legislation that is involved in this case. The authority to the defendant is to issue its bonds and exchange them for money, and with the money to pay the defendant's subscription to the capital stock of the Long Eddy Manufacturing Company. The purpose then to be achieved was to be reached through that company, and by the use of its corporate powers and the privileges conferred upon it by any special act of the legislature. Those corporate powers are expressed in the certificate of its incorporation, made and filed in pursuance of a general law. They are to construct and improve a water privilege on the Delaware river, and to manufacture lumber, " etc," thereon.

After the incorporation of it, power was given to it to build a dam across that river, with certain restrictions. It must be plain that there is nothing in the fact of this body being a corporation that brings any factor into the problem. Any individual, or partnership of individuals, with the requisite capital, could do all that this corporation proposed to do, or had corporate power or privilege to do, and with the same results to the public. If done by an individual or by a copartnership, the public and each member of it as a member of it only, would have just as much use and interest in it, and just as much benefit from it, as if done by the corporation. In either case it would be a private business, to be carried on for private profit, to be controlled by private rules, or even private caprice, into which the public or any member of it could not enter, the direct conveniences and benefits whereof neither the public nor any member of it could demand as of right. No member of the community could insist that he would, at any time or some time, in accordance with rules operating alike upon all, have personal use of the water privilege, or have his saw-logs made into lumber. The corporation could refuse him at any time and at all times. Indeed, they could at any time suspend the use of, or altogether abandon their constructed and improved water privilege, and the manufacture of lumber for themselves or for the public, and no one, not of their body, could compel to the contrary. It is not as a highway or as a public canal upon which any one may enter with his own vehicle or craft, nor as a public school or a public free-seated meeting-house, to which any one may go or send, nor even as a railroad upon which any one has a right to be carried. It is a private undertaking for private business and profit. The use of it to the public is secondary to that, and tributary to that; the benefit to the public is remote and consequential. So, too, the authority to dam the Delaware could as well have been given to an individual or a copartnership, and the results to the public are as far from being direct. The act conferring that authority does not, in its terms, indicate any public use

or purpose in the building of the dam. The corporation is restricted in the building of it, so that it shall be so made as not to interfere with the running of rafts in the river, and the certificate of two judicial officers that it will not have that effect is a prerequisite to the erection of it, and the height of it is to be prescribed by them. As this is the only mention of any public use and purpose in the act, and as this is named to be guarded from interference, it is not too much to say that the inference from the act itself is, that the legislature did not look upon the enterprise as other than private, for the private benefit of the corporation which received it. It is suggested that it gives a power to flow lands of private owners along the river, and to estimate the amount of compensation to them therefor by the appraisal of commissioners; and that hence it is to be inferred that the legislature perceived a public purpose. It does give the corporation the right to purchase, receive and hold, such real estate as may be necessary and convenient for the company to accomplish the object for which it was incorporated, and as is liable to be flowed by reason of the erection of the dam. Here is no power to take lands from an unwilling owner, or to flow his lands. The authority given is only to purchase, and to receive and hold that which is thus got. The provision for commissioners to appraise the damages of any owner of lands flowed is for a case in which the owner does not resist the flowing, but claims for the damages resulting from the act. There is nothing in the act, to our apprehension, which would prevent the owner of lands flowed, or likely to be flowed, from restraining the continuance or commencement of the act of flowing them. It is simply an act conferring the right to purchase and hold real estate for certain purposes, and which creates a tribunal to which the owner of the lands and the corporation may submit the claim for damages arising from any flowing. There is not provision in it to compel any owner to part with his land, nor to submit to the award of the commissioners. There is no final order to be made by the Supreme Court until payment has been made of the dam-

ages awarded. Payment could not be made unless it was taken by the owner, and he was not bound to take it unless willing so to do. The operation of the act depended upon the will of each one owning lands affected. So that there is in it no exercise by the legislature of the right of eminent domain, nor any delegation thereof.

There is not to be discovered in the powers obtained by the certificate of incorporation, or by the last act mentioned, any public use or purpose, more than is found in the setting on foot of any business or industry in a community by private parties. Any such enterprise tends indirectly to the benefit of every citizen by the increase of general business activity, the greater facility of obtaining employment, the consequent increase of population, the enhancement in value of real estate and its readier sale, and the multiplication of conveniences. But these are not the direct and immediate public uses and purpose to which money taken by tax may be directed. We may well adopt the *obiter dictum* of Grover, J., in *The People ex rel.* v. *Batchellor* (53 N. Y., 128, 143): "I think it would not be claimed that a town could be compelled to become a stockholder in a banking or *manufacturing* corporation, although it appeared that the particular corporation would largely promote the public interest where the business was conducted. Such legislation could only be sustained by holding the power of the legislature supreme over municipal corporations for private as well as public purposes. Upon principle and authority, I think that it is not as to the former, although it is as to the latter." Add to that, that the legislature may not empower a majority to compel a minority to enter into a private business, whether the form of effecting the end be by a direct statute or through the operation of taxation.

It is suggested that the findings of the Special Term are such as that this court may not inquire whether or not there was a public purpose. It is plain that the learned justice at Special Term was not willing to find as a fact without qualification, that the objects and purposes of the

Long Eddy Manufacturing Company were public. He says they were not exclusively and strictly of a private nature, but to some extent partook of a public character, were sufficiently broad and extended to include a public use. Had he stopped with this generality the finding would have been stronger. But he explains how this general finding is reached, by the particulars which he gives. In reality the particulars are the findings of fact, and the generality is a conclusion of law from them. The conclusion is not warranted by the particulars. They are those consequential, indirect and remote results which we have above commented upon as not that public use and purpose which warrants taxation to effect them. But there is another quite as grave reason why this finding is of no avail. The defendant duly excepted to it. An examination of the case fails to disclose the testimony which will of itself, or by any legitimate inference from it, afford ground for the finding. Such a finding is an error of law; and what is more to the purpose in this discussion, it fails to affect an appellate court on review of the judgment.

The very able and ingenious argument presented by the learned counsel for the appellant presents a point which we think is novel; it is this: The Constitution (art. 1, § 9) forbids the legislature from appropriating public moneys for local and private purposes, save by a two-thirds vote; the prohibition implies the assent of the Constitution, that the appropriation may be made with a two-thirds vote. But as an appropriation must take from the treasury, the treasury must be supplied again, and can, as a rule, be supplied only by taxation. Then, (runs the argument of counsel), taxation for private purposes is, impliedly, recognized and validated by the Constitution. Should this be granted, it still remains to find the right, in or out of the written Constitution, to delegate a power to appropriate for a local or private purpose. The implication cannot be broader than the terms of the prohibition. It is the legislature only that can appropriate to a local or private purpose. And it is of public moneys

only, moneys already at or before appropriation become public ; raised for public use by legitimate taxation to that end, and any deficit in them to be supplied only by legitimate taxation.   The argument is not sound, and will not sustain a statute for the imposition of a tax, the money derived wherefrom is at once, upon collection, by the terms of the same statute, to be paid out for a private purpose.   And it comes back to the same question : can the legislature impose a tax for a private purpose, or singly and directly, to replace in the treasury moneys bestowed by it upon a private purpose ? We think not.

It is urged that there has been worked an estoppel, preventing the assertion by the defendant of the invalidity of these bonds.   It is conceded by the appellant that where an act is beyond the scope of corporate power a municipality cannot be debarred from raising that objection by any subsequent conduct of its officers and agents.   But it is contended that the inhabitants of the municipality may be estopped and bound by acts of acquiescence and approval, after knowledge of the facts, and that their acts may thus affect the corporate body of which they are the elements.

The municipality is the defendant here.   The inhabitants are not parties to the suit nor to the bonds.   Though the inhabitants of a place be incorporated, they are not the corporate body ; the very object of the incorporation is to form a legal body, not to be affected in its duration by a change among the constituent parts of it.   If it should be granted that the inhabitants may be estopped, that cannot affect the defendant ; it, is a political entity quite different and apart from the varying multitude who are from time to time the inhabitants of the territory within its corporate bounds. Their acquiescence cannot affect it.   And if every one of the inhabitants of the village of Douglas who were *sui juris* at the time when these bonds were issued, or at the time when the payments of interest were made upon them, had joined affirmatively in all those acts, that could not conclude the present population as a body, some of whom have,

doubtless, come in since then, or come to majority since then, or in many other ways now come into the category of inhabitants.

The case of *Allegheny City* v. *McClarkan* (14 Penn. St., 81) does not commend itself to our judgment in all the doctrine there advanced. Perhaps it may be sustained under the particular statute there in question, or one like it. It is not an authority or a precedent for the case now in hand. The doctrine in *Thomas* v. *City of Richmond* (12 Wall., 349) is more agreeable to our judgment.

The case of *The People ex rel.* v. *Havemeyer* (4 N. Y. S. C. [T. & C.], 365), it would be improper to discuss at length at present. We are not sure that it has not been appealed from. It is sufficient to say that the facts of that case are quite different from those here, and that the discussion in the opinion there delivered does not change the views we here express. Nor is the position tenable that the bonds, upon the face of them, assert that they are for a public purpose. Though they bear the words " Internal Improvement Fund," they also declare that the debt represented by them is authorized by a certain act of the legislature, to which reference is had by date and title. Thus is one about to take them put upon inquiry. And a reference to the session laws would fail to show any act of that date authorizing the debt, or would inform for just what purpose and in just what manner and on what prerequisites they were to be issued.

We come to the conclusion that the bonds sued upon are without validity against the defendant.

Other questions raised by the points of the respective counsel need not be noticed.

The judgment of the General Term should be affirmed.

All concur.

Judgment affirmed.