Bradbury, J.
the answer of the respondent, if true, shows that the demand of the relator has no foundation, whatever, in fact or justice; that the board of education was under no obligation, legal or moral, to pay the same, and that the fund to be raised by virtue of the act of the general assembly differed in no essential particular from a mere gratuity provided for his benefit. The de- ’ murrer admits the truth of the averments of the answer. In such a state of things the act must be held invalid unless the general assembly has authority to corhmand a local subdivision of the state to raise by taxation a fund for the benefit of an individual to whom it is under no obligation whatever, or where in such ease a dispute exists, the enacting of a statute, wherein the facts are declared to be as contended by the claimant, is .to be taken to be a legislative determination, of the dispute in his favor, binding upon the parties, so that the alleged debtor will be estopped from contesting the existence of the disputed facts in the courts of justice. If either of these alternatives is true, there is no constitutional limitation on the power of the legislature to levy exactions on the public as a whole, or on subdivisions of it for political or governmental purposes, for the benefit of favored individuals.
*538 It may be true that the responsibility the individual members of the legislature are under to their constituents, or their sense of public duty is a sufficient guaranty against any great injustice in this direction, and, therefore, that unlimited power of taxation vested in that body would not be followed by vicious results generally, though it might be in exceptional instánces. However this might be, we, in the present inquiry, are more concerned in determining whether such unlimited power does exist than in the question of the wisdom and expediency of granting it.
Whatever power of taxation resides in the general assembly does so as an incident -of the general legislative authority delegated to that body by section 1 of article II, of the constitution of 1851. This court, holding in Western Union Telegraph Co. v. Mayer, Treas., 28 Ohio St., 521, that the provisions of article XII, of that instrument, though they relate to finance and taxation, are limitations upon, rather than grants of power of taxation ; and this, too, althoug’h section 4 of this statute expressly requires the general assembly to provide revenue to defray the yearly expenses of the state and pay the interest of its public debt. The power of taxation vested in the general assembly would have been just the same without, as with, this section.
That the authority to impose taxes is in ibs nature legislative, is established by the uniform current of judicial opinion. Cass Township v. Dillon, 16 Ohio St., 38; State ex rel. v. Harris, 17 Ohio St., 608; State ex rel. v. Wilkesville Township, 20 Ohio St., 288; State ex rel. v. Richland Township, Id., 362; State ex rel. v. Circleville, 20 Ohio St., 362; 25 Am. & Eng. Enc. of Law, 1871; Cooley on Taxation, 41-53.
*539 That the legislative branch of the government is necessarily clothed with a broad discretion in determining the character, whether public or private, of the purpose for which funds may be raised by taxation, is equally well settled. Cooley on Taxation, 43; 25 Am. & Eng. Enc. of Law, 72; Cooley’s Constitutional Limitations, 599.
. In doubtful cases the courts should not interfere with the excise of this legislative discretion, and in all cases the legislative determination is entitled to great respect. Hanson v. Vernon, 27 Iowa, 28; Brodhead et al. v. Milwaukee, 19 Wis., 624; 25 Am. & Eng. Ency. of Law, 89, 90. That the power, however, is not unlimited is, we think, clearly established by the great weight of authority as well as of reason. State ex rel. v Commissioners, 35 Ohio St., 468.
The power of taxation is given to the general assembly as an indispensable means of providing for the public welfare, government could not be carried on without such power, and the power should be commensurate with the objects to be attained, but no good reason can be assigned for vesting it with power to take portions, large or small, of the property of one or a number of persons and granting it as a benevolence to another. Where a legislature attempts this, directly or indirectly, it passes beyond the bounds of its authority, and the parties injured may appeal to the courts for protection. The same constitution which grants the power of taxation to the general assembly recognizes the sanctity of private property, and declares that the courts shall be open for the redress of injuries.
This limitation on the legislative power of taxation is generally recognized by the authorities. *540 The rule supported by a long array of adjudicated cases is laid down in 25 Am. & Eng. Ency. of Law, 74, as follows: “It is within the province of the courts, however, to determine in particular cases whether the extreme boundary of legislative power has been reached and passed.” In Weismer v. Village of Douglas, 64 N. Y., 99, Folger, J., says: “But to tax A and the others to raise money to pay over to B, is only a way of taking their property for that purpose. If A may of right resist this, as surely he may, how is he to make resistance effective and peaceable save through the courts, which are set to be his guardians ? How may the courts g’uard and aid him, unless they have the power, upon his complaint, to examine into the legislative act, and to determine whether the extreme boundary of legislative power has been reached and passed?”
It may be conceded that the general assembly may authorize one of the political subdivisions of the state to levy a tax to pay a demand not legally enforceable, but founded upon a moral consideration, or may even command that the levy shall be made for that purpose, and yet deny to it* the power to determine conclusively the existence of such obligation.
On the other hand it may be contended that if the power to levy a tax for a private purpose i s denied to it, it follows as a corollary that it had no power to determine the character of a demand, for if it had the latter power it could defeat thé limitation by falsely finding’ the claim to be founded, at least, on a moral consideration. We do not think the conclusion follows, for that would be to impute bad faith to a co-ordinate branch of the government which is not permissible.
*541 We think, however, that whenever a contention arises between an individual and some public body respecting the existence of a claim against the latter, the controversy falls within the province of the judiciary. We do not deny the power of the general assembly to inquire into the merits of any claim sought to be asserted through its agency, before granting relief to the claimant by legislative action. Not only has it such authority, but its exercise should be carefully and rigidly observed.
Such • investigation, subsequent determination and resulting action, however, clo not estop the parties from appealing to those judicial tribunals of the country that have been established under our constitution and by it vested with the judicial power of the state, and by our laws provided with an appropriate.procedure to conduct such inquiries. Cooley’s Constitutional Limitations, 115, and cases cited. 3 Am. & Eng. Ency. of Law, 681.
If, in the ease under consideration, the relator has paid out money for the benefit of the respond-dent, for which, by some mistake, accident or error, he has never received credit, it is morally bound to make it good and this moral obligation is sufficient to support the statute in question. Lewis, Trustee v. McElvain, 16 Ohio, 355; Trustees v. McCaughy et al., 2 Ohio St., 152; Burgett et al. v. Norris, 25 Ohio St., 308; Rairden et al. v. Holden, Adm'r, 15 Ohio St., 207; Cass Township v. Dillon, 16 Ohio St., 38; Ohio ex. rel. Anderson v. Com'rs of Holmes Co., 17 Ohio St., 608; Board of Education v. McLandsborough, 36 Ohio St., 227; Cooley on Taxation, 127-8, State ex. rel. Bates v. Richland Township, 20 Ohio St., 362; State ex. rel. v. Hoffman, 35 Ohio St., 435; Warder v. Com'rs, 38 Ohio St., 643. Cooley’s Cons. Lim., 283. Where, however, the *542 facts, out of which a moral (or legal) obligation is claimed to arise, are disputed, the contention falls within the province of the courts, under the distribution of governmental powers prescribed by our constitution. Sec. 1, of Article IV of the Constitution of 1851.

Judgment reversed and cause remanded with instructions to overrule the demurrer to the answer of the respondents.

Williams, J., not sitting.