THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN F. NASH, as Assignee of A. HERBERT CRAWFORD and Others, Respondent, *v.* THE BOARD OF SUPERVISORS OF ONONDAGA COUNTY, Appellant.

Fourth Department, October 21, 1914.

County — expense of prosecution resulting in removal of sheriff — when counsel fees are county charge — constitutional law.

The reasonable expense of residents of a county in employing counsel to prosecute before the Governor a proceeding voluntarily brought by them, resulting in the removal of a sheriff from office upon the ground that he was unfit to discharge his duties, is an expense for a county or public purpose within the meaning of section 240 of the County Law, and the board of supervisors of the county will be required by mandamus to audit such claim as a county charge.

*It seems,* that if the accusation against such officer were frivolous or not presented in good faith, the expense of the prosecution would not be a county charge, and that the audit thereof would be a gift and within the prohibition of section 10 of article 8 of the State Constitution.

APPEAL by the defendant, The Board of Supervisors of Onondaga County, from an order and judgment of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Onondaga on the 28th day of January, 1914, directing that a peremptory writ of mandamus issue to the defendants.

The order was made upon the report of a referee appointed to hear and determine the issues.

*Herbert L. Smith* [*Ray B. Smith* with him on the brief], for the appellant.

*John F. Nash,* for the respondent.

Judgment affirmed, with costs, upon the opinion of Hon. IRVING G. VANN, Referee.

All concurred.

The following is the opinion of the referee:

IRVING G. VANN, Referee:

In April, 1911, three residents of the county of Onondaga, for convenience called the complainants, presented to the

Governor certain charges against Frederick Wyker as sheriff of said county, and asked for his removal from office. Mr. Wyker filed an answer denying the charges and the issue thus joined was sent to a commissioner, who took the evidence and reported the facts, and upon the evidence thus taken and the report so made the sheriff was removed.

John F. Nash, Esq., a member of the Onondaga bar, was employed by the complainants to prepare the charges, look up the evidence and try the case before the commissioner. Claiming that they were entitled to reimbursement from the county for the reasonable expenses incurred by them in employing counsel to prepare and prosecute the charges, the complainants assigned their bill, amounting to $1,050, to Mr. Nash, who presented it to the board of supervisors for audit and allowance as a county charge. The board refused to allow any part of the bill upon the ground that it was not a lawful charge against the county, whereupon a writ of alternative mandamus was issued by the Supreme Court at Special Term, requiring the appellant to audit the bill or show cause in the usual way. The return filed to the writ raised the issue of fact whether the services of Mr. Nash were worth the amount charged and the issue of law whether the bill was a county charge, and those issues were tried before the referee.

The services of Mr. Nash were ably and thoroughly performed, but, being somewhat protracted and continuous, and to some extent such as could have been rendered by a competent clerk, were worth, as I think, differing somewhat from the expert called on either side, the sum of $20 for each of the forty-two days devoted to investigation, preparation and trial, amounting to $840.

The question of law has been ably discussed by counsel and is entitled to serious consideration.

By the County Law, " The reasonable costs and expenses in proceedings before the Governor for the removal of any county officer upon charges preferred against him, including the taking and printing of the testimony therein," are made county charges. (County Law, § 240, subd. 16.)* This provision had

---

* See Consol. Laws, chap. 11 (Laws of 1909, chap. 16), § 240, subd. 16.— [REP.

already been enacted in substance as early as 1874. (Laws of 1874, chap. 323, p. 388.)

Our State Constitution provides that "No county &ast; &ast; &ast; shall hereafter give any money or property &ast; &ast; &ast; to or in aid of any individual, association or corporation &ast; &ast; &ast;." (Art 8, § 10.) The question presented in this case is whether the provision quoted from the County Law violates the provision quoted from the Constitution.

There was no contractual relation between the complainants and the county, nor between Mr. Nash and the county. The action of the complainants was purely voluntary, without request from any officer or body, and, hence, their claim for reimbursement rests wholly on the statute.

The manifest object of the Constitution is to prevent the use of public money or property for private purposes, regardless of the form of the gift. If said provision in the County Law authorizes the use of money belonging to a county for a private purpose, it is void as enacted in violation of the Constitution. The question, therefore, is whether the expenses of the complainants in prosecuting the sheriff were incurred for a public or private purpose. If they were incurred for a public purpose they were valid and should be paid, but if they were incurred for a private purpose they were invalid and should not be paid. It seems, therefore, to come down to this as the ultimate question: Is the removal from a county office of an incumbent who is unfit to discharge the duties thereof a county purpose or a public purpose so far as the county is concerned ?

It is to be observed that the statute does not authorize payment of the reasonable expenses of defending, but only of prosecuting a public officer. The word "reasonable" as thus used does not apply simply to the amount of the expenses, but it applies also to the charges preferred, because no expense would be reasonable unless the charges were founded on probable cause. (*People ex rel. Smart* v. *Board of Supervisors*, 66 App. Div. 66, 71.) It might well be held that if the accusation was frivolous, or was not presented in good faith, the expense of prosecution would be in the nature of a gift, and, hence, not a county charge under any possible view. That question, however, is not now presented, for neither the

evidence against the sheriff nor the propriety of his removal are before me, and I am compelled to presume from the record of removal that the charges preferred were substantial and that the evidence justified the action of the Governor. I am also compelled to presume from said record that the action of Mr. Wyker, not as sheriff, but while he was sheriff, in his relation as an individual to the Onondaga penitentiary under cover of his brother's name, had deprived the county of a substantial sum of money, to which it was lawfully entitled.

Under these circumstances it may be asked, Was there no public interest involved? Were not the taxpayers interested as such? Was their welfare as members of the municipal corporation, known as the County of Onondaga, not affected by the continuance in office of the sheriff? Must a county submit to spoliation unless some citizens have enough public spirit to institute a prosecution, and if they do so in order to protect the county and promote the public welfare of the county, and their efforts result in the removal of the officer, is it a *gift* of public money in any proper sense to reimburse them for their reasonable expenses incurred in the prosecution? Was the prosecution of the sheriff a county purpose, in the sense of a corporate or governmental purpose, when county funds had been diverted from corporate to private uses? Was there a moral and equitable obligation on the part of the county to pay the reasonable expenses incurred by private citizens for the benefit of the county, to protect its treasury and prevent the waste of its money? These questions answer themselves, as it appears to me.

The courts have found difficulty in defining a city or county purpose and have usually proceeded by the process of exclusion. Thus in a noted case that is frequently cited, Judge FOLGER said: "When we come to ask, in any case, what is a public purpose, the answer is not always ready, nor easily to be found. It is to be conceded that no pinched or meager sense may be put upon the words, and that if the purpose designated by the Legislature lies so near the border line as that it may be doubtful on which side of it it is domiciled, the courts may not set their judgment against that of the law makers." After

referring to certain cases the learned judge continued: " It has been accepted in this State as a binding adjudication, that the Legislature may tax, or delegate to a political division of the State the power to tax, or may compel that division to tax, to raise money to pay a legal, equitable or moral claim, or to do that toward an individual which proper and expected sense of gratitude for public service ought to prompt, or a feeling of charity (which, in a legal sense, is, perhaps, as used here, no other than moral obligation) urge. It may also be conceded that that is a public purpose from the attainment of which will flow some benefit or convenience to the public, whether of the whole commonwealth or of a circumscribed community. In this latter case, however, the benefit or convenience must be direct and immediate from the purpose, and not collateral, remote or consequential. It must be a benefit or convenience which each citizen of the community affected may lay his own hand to in his own right and take unto his own use at his own option upon the same reasonable terms and conditions as any other citizen thereof. He may not be made to depend for it on the spontaneous action of others, or to receive it in uncertain degree or manner or roundabout way, or hampered with dis‧criminating distinctions and conditions." (*Weismer* v. *Village of Douglas*, 64 N. Y. 91, 100.)

I find no case decided by the court of last resort that is strictly analogous to the one in hand, but there are cases which bear directly on the principle involved. Thus in *Cayuga County* v. *State* it was held that a statute authorizing the Board of Claims to audit the claim of Cayuga county for moneys previously expended in the trial of convicts at Auburn prison, for crimes committed in the prison, was not an infraction of the section of the Constitution under consideration, which contains the same prohibition against the gift of moneys belonging to the State as in the case of a county or city.* The court, through Chief Judge ANDREWS, said: " The provision for reimbursement of the county was not a gift of money of the State, but was intended as a discharge of an equitable obligation, although unenforceable, which in the judgment of the

* See Const. (1874) art. 8, §§ 10, 11; Const. (1884) art. 8, § 11; Const. (1894) art. 8, §§ 9, 10; Const. (1899, 1905, 1907, 1909) art. 8, § 10.— [REP.

Legislature rested upon the State." (*Cayuga County* v. *State,* 153 N. Y. 279, 293.)

In *Matter of Chapman* v. *City of New York* (168 N. Y. 80), which is relied upon by the appellant, the court held that payment from the funds of a county or city of the expenses incurred by a police officer in successfully *defending* charges preferred against him for official misconduct was virtually a gift and not a city or county purpose on the ground that there was no moral obligation on the part of either to pay the claim. The court said: " For time out of mind in all governments where the common law prevails a person prosecuted for crime has been compelled to pay his own expenses when he had the means of doing so. (*People ex rel. Brown* v. *Bd. of Supers. Onondaga Co.,* 4 N. Y. Cr. Rep. 102; affirmed, 102 N. Y. 691.) If without means, the counsel assigned by the court served without pay, except under a recent statute a moderate allowance may be made in a capital case. (L. 1897, ch. 427; Code Cr. Pro. section 308.) This exception is founded on the theory that a fair trial cannot be had without the aid of counsel, and that money paid from public funds to counsel appointed by the court for a prisoner without means, *is paid for a public purpose.* The proceeding instituted against the appellant was not a prosecution for crime, but to discipline or remove him for misconduct as a public officer. There was no authority, statutory or otherwise, to appoint counsel to defend him, and no attempt was made to do so. It was necessary for him to employ and pay his own counsel, as has always been the case with others similarly situated. Payment of his expenses by the public would be a mere gratuity, and without the sanction of custom or precedent. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense. Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public, against even

unjust attempts to enforce the law, the same as he assumes the burden of taxation." Thus it was held that payment under those circumstances would be a gratuity because there was no moral obligation on the part of the city of New York to defend a police officer charged with official misconduct.

The court, however, distinctly said, by way of illustration, for the point was not involved, that money paid from public funds to counsel appointed by the court for a prisoner without means, when charged with crime, is paid for a public purpose. This principle is recognized by many cases and it is the universal practice of the Supreme Court at Trial Terms to appoint counsel to defend a poor prisoner charged with a capital offense and to direct payment for their services under section 308 of the Code of Criminal Procedure. The same practice prevails in the Court of Appeals with reference to appeals in such cases and scarcely a term passes without the exercise of the power by that court. (*People* v. *Barone*, 161 N. Y. 475, 477; *People* v. *Ferraro*, 162 id. 545.) Thus the Court of Appeals has indirectly, in a multitude of cases, held that a statute authorizing the payment of counsel assigned by the court to defend in capital cases was valid and enforcible and the court has itself repeatedly enforced it. The distinction between those cases and the *Chapman* case is obvious, for in the latter the statute authorized payment for defending a person not charged with crime, but for misconduct as a police officer, while in the former the statute authorized payment to counsel actually assigned by the court to defend a person charged with the gravest crime known to the law. The court recognized the validity of the statute in another case when it said through Chief Judge PARKER: "The State attempts to safeguard the life and liberty of citizens, and as one of the steps in that direction secures to them, if under indictment, the services of counsel learned in the law to conduct their defense; and when the crime charged is punishable by death, the State provides for the payment of counsel assigned to such duty." (*People* v. *Triola*, 175 N. Y. 407.)

There is a well-considered case in the Supreme Court which is strictly analogous, as will be seen when the facts are stated. In 1898 certain taxpayers of the county of Washington formed

an unincorporated association for the purpose of investigating the bills of county officials and removing officers who presented fraudulent claims. The president of the association preferred charges against the sheriff of the county, alleging misconduct on his part in presenting fraudulent accounts to the board of supervisors, whereupon the sheriff resigned. The supervisors refused to audit the claim presented by the president for the reasonable expenses incurred in the employment of counsel and the court at Special Term sustained their action. Upon appeal to the Appellate Division the judgment of the Special Term was unanimously reversed, and it was held that under the County Law the claim was a county charge, notwithstanding the fact that the president appeared as an individual complainant in the proceedings before the Governor. The court, through Mr. Justice SMITH, referring to the provision now in question, said: "This legislation was re-enacted in the Laws of 1892* with the amendment providing that ' the reasonable costs and expenses' in such a proceeding should be a charge against the county. This legislation, in view of the allowance made in the very enactment in which it is first found, would seem to me to negative the rule of law as held by the learned trial judge. * * * A private citizen clearly had the right to make and prosecute charges before the Governor. The statute does not limit the right to reimbursement to counsel employed by the Governor or employed by the Attorney-General. For the court to add to the statute a restriction not included by the Legislature would be unwarranted judicial legislation. Nor does the fact that the county might be subjected to numerous bills of expenses warrant the court in placing in the statute a limitation which the Legislature has omitted. It is probable that the court would interpret the reasonable costs and expenses of a proceeding before the Governor, as such costs as are incurred in a proceeding instituted upon reasonable grounds. With that interpretation there could be no fear of an excessive liability to the county, and the same policy of the law which protects a prosecutor of crime where there is probable cause to believe in the commission of the crime, might be urged to encourage one making charges

---

* See County Law (Gen. Laws, chap. 18; Laws of 1892, chap. 686), § 230, subd. 16.— [REP.

against a public officer where there is probable cause for belief in his guilt. * * * We are, therefore, of opinion that for such expenses and disbursements as were reasonably made by the relator in the prosecution before the Governor, after the filing of the charges, the relator is entitled to reimbursement." (*People ex rel. Smart* v. *Board of Supervisors,* 66 App. Div. 66, 71.)

I am bound to follow this case, 'which is controlling upon substantially every point raised by the appellant. It is, therefore, my duty to recommend that a peremptory writ of mandamus be issued by the Supreme Court commanding the appellant to audit the claim of the relator.